[No. 13020.   Department One.   July 11, 1916.]

I. C. Holloway *et al.*, *Plaintiffs*, v. Jacob H. Geck *et al.*,
*Defendants.*[1]

Appeal—Review—Pleading — Amendments.  Where objections to
a complaint have been met by the proofs, the complaint will be
deemed amended on appeal to conform thereto.

Waters and Water Courses—Surface Waters—Discharge—In-
junction—Relief.  Injunctive relief against the collection and dis-
charge of surface waters in a manner different from the natural flow
will not be denied because the ditches are upon lands of a third per-
son, where the defendants had owned such land at the time they
made the ditches and are continuing to use the same.

Same.  A recurring injury by the continued collection and dis-
charge of surface waters in a manner different from the natural
flow may be enjoined, and the plaintiff is not relegated to an action
for damages because the ditches have been completed.

Same.  Injunctive relief should not be granted against an owner's
draining one marsh on his premises into another where that was
the natural outlet, although it lowered the level of the upper marsh,
where it did not increase the volume of water passing to plaintiff's
land in the natural course of drainage.

Same.  In an action to restrain the drainage of surface waters
through ditches upon the land of a third person, who was not a
party to the action, the court is not warranted in requiring defend-
ant to fill the ditches, injunction against their use being sufficient.

Cross-appeals from a judgment of the superior court for
Island county, Ralston, J., entered May 24, 1915, in an ac-
tion for an injunction, tried to the court.  Affirmed.

*James Zylstra*, for plaintiffs.

*LeCocq & LeCocq*, *J. A. Coleman*, and *James M. Hogan*,
for defendants.

Fullerton, J.—The plaintiffs are the owners of forty
acres of land in Island county, described as the northeast
quarter of the southwest quarter of section 23, in township
33, north, range 1, east of the Willamette Meridian.   The

[1]Reported in 158 Pac. 989.

defendants, in the year 1912, owned the whole of the southeast quarter of the same section, and at present own all thereof except the northwest quarter, which has passed into the ownership of a Mrs. Adams. While the defendants held the ownership and possession of the entire tract, they constructed a ditch on their lands which led up to the county road dividing those of plaintiffs from that part of the defendants' lands now owned by Mrs. Adams. The ditch, as it runs through the Adams tract, is covered. The purpose of this ditch was the drainage of surface waters from marshes on the defendants' land. There are three of these marshes, designated by the witnesses as the north, center, and south marshes. For the purposes of draining the north marsh into the center marsh, a ditch was constructed in 1913 through a four-foot barrier. The south marsh has a natural outlet into the center marsh, when the accumulation of water rises to a sufficient height, but in the year 1915, defendants constructed a ditch from the south marsh which caused it to drain at a lower. level. The north and south marshes are on higher land than the center marsh, and all of the marsh lands are higher than the lands to the westward, the natural surface of the lands having a downward slope in a northwesterly direction, the depression continuing westward beyond the lands of plaintiffs.

Before the construction of the ditches, when the waters accumulated in the center marsh sufficient to overflow a barrier of about a foot and a half in height, they flowed through a depression in the surface till they reached about the center of the Adams' forty, when they deflected more sharply to the northwest, and were cast by the natural course of drainage across the northeast corner of the plaintiffs' land. When the defendants constructed their ditch from the center marsh, they followed the natural course of drainage as far as the center of the Adams' forty, and there turned the ditch directly west, casting the waters against the lands of the plaintiffs at a point some five hundred feet south of

where such waters would naturally drain. In the spring of 1913, the defendants turned the marsh waters into the ditch and they were discharged against the county road which separated the Adams' forty from plaintiffs' land, from which point the water flowed northward, filling the road ditch and seeping under the road, causing the premises about the house of plaintiffs to become wet and miry. To avoid this, the plaintiffs attempted to take care of the water by placing a culvert under the road some twenty-two feet south of the end of the ditch, and led the waters that way into a short open ditch onto their land. The defendant Jacob Geck assisted in this work. As the waters were discharged from the last mentioned ditch, they spread out fan shaped by seepage and flow through and over the land, rendering it boggy and unfit for cultivation. The plaintiffs could have so ditched their own land as to leave themselves practically unharmed, but that would have necessitated casting the water onto their western neighbor. The discharge from the ditches has since recurred at every season when the rains increase the accumulation of surface waters in the marshes.

In 1914, the defendants constructed another ditch from the south marsh which led to a point where its waters were so cast as to flow upon the southern portion of the plaintiffs' land, increasing the dampness of the soil on that portion. The water in this ditch began to flow about January 1, 1915, but at the time of the trial this ditch had been plugged up and no water was escaping therefrom. This ditch did not follow the natural course of drainage, and was in fact cut through a barrier of cement gravel.

The plaintiffs brought this action to enjoin the maintenance of the ditches, and to recover damages claimed to have been suffered by their maintenance. Mrs. Adams, the present owner of the land upon which was constructed the ditch draining the center marsh, was not made a party defendant. The court, in giving judgment, ignored the question of dam-

ages. It decreed that the defendants should be enjoined from diverting the waters from such marshes so as to flow upon the plaintiffs' land at any place other than where the natural drainage course causes such water to enter or flow thereon, and refused to require the ditches to be filled. It reserved, however, another action in the plaintiffs should subsequent events show a necessity for filling the ditches. Both parties appeal.

The first contention of the defendants is that the complaint does not state facts sufficient to constitute a cause of action, but we think that all the objections urged by them have been met by the proofs offered on the trial, and we will deem the complaint amended to conform to such proofs.

The next contention is that the judgment of the superior court is contrary to the evidence. This is based largely on the fact that the ditch which causes the damage is not located on land belonging to the defendants, but is upon land intervening between the lands of the parties, whose title and possession rests in a third person. But the evidence shows that defendants were the owners of this intermediate land at the time the ditch was constructed, and that they still make use of the ditch for the purpose of draining the marsh waters. Their act of turning the waters from the marshes into the ditch is the efficient cause of the injury to the land of plaintiffs, and since the injury is a continuing one, it is a subject for injunctive relief. The principles governing the case have already been enunciated by this court. Cases presenting almost parallel facts will be found in *Noyes v. Cosselman,* 29 Wash. 635, 70 Pac. 61, 92 Am. St. 937, and *Sullivan v. Johnson,* 30 Wash. 72, 70 Pac. 246. In the second of these cases, the rule is stated as follows:

"Where surface waters are confined by natural barriers so that the same do not run from such confinement naturally, the upper proprietor may not construct a ditch so as to cast such waters upon his neighbor, to the material injury of such neighbor."

See, also, *Peters v. Lewis*, 28 Wash. 366, 68 Pac. 869, where it is said: ·

"When surface water is collected and discharged upon adjoining lands in quantities greater than, or in a manner different from, the natural flow, a liability accrues for the injury occasioned thereby. Injunction is held to be a proper remedy where the injury is a continually recurring one, and cannot be compensated in damages."

This last citation disposes of defendants' contention that plaintiffs should be relegated to an action for damages because the ditch has been completed and is no longer a threatened injury, as it is plain that the injury involved in the instant case is a recurring one and as such subject to restraint by injunction.

The plaintiffs contend that the decree does not go far enough, because it does not restrain the drainage from the north and south marshes into the center marsh. Inasmuch as the casting of these surface waters upon any other part of their land than where they were accustomed to flow by natural drainage was enjoined, they can suffer no injury by this act, since the evidence does not disclose that the volume of water passing over their land in the natural course of drainage has been increased by the junction of the three marshes. The waters of the south marsh, in case of heavy rains raising their level, found their natural outlet into the center marsh before the construction of the ditch between them. True, the effect of the ditch was to allow it to drain at a lower level than it did formerly, but there is no proof of a resultant injury. Moreover, the trial court in dismissing this branch of the case, conceded plaintiffs the right of another action should subsequent events show a resultant damage.

The plaintiffs further contend that the court should have required defendants to fill the ditch on the Adams' land from the point where it departs from the natural depression of the ground, but it is sufficient answer to this to say that the

owner of the land through which this ditch passes was not made a party to the action, and the court would not be warranted in authorizing an entry on her land for such purpose. More than this the defendants are restrained from using the ditch for the purpose of ridding the marshes of the waters. If they cannot use it for that purpose, it matters not to the plaintiffs whether it is filled or left open.

The judgment is affirmed.

MORRIS, C. J., MOUNT, ELLIS, and CHADWICK, JJ., concur.