[No. 15917.   Department One.   February 7, 1921.]

## E. M. Whiteside, *Respondent*, v. Benton County, *Appellant*.[1]

Counties (57, 58) — Liabilities — Torts—Governmental Functions—Public Improvements. A county is not strictly a municipal corporation or within the rule of nonliability for damages brought about in the performance of governmental functions; and hence is liable in tort for flooding land in doing road work.

Waters and Water Courses (56)—Surface Waters—Drainage or Discharge—Liability. A county is liable for damages caused by flooding land where, in order to protect a road from surface waters, it dug an artificial ditch conveying and depositing waters on land that naturally would not receive them.

Damages (57)—Injury to Real Property—Damages From Overflow. The measure of damages from overflowing a tract of land is the difference between the value of the tract immediately before and immediately after the injury; and not the injury to the particular part submerged.

Appeal from a judgment of the superior court for Benton county, Truax, J., entered January 7, 1920, upon the verdict of a jury rendered in favor of the plaintiff, in an action in tort. Affirmed.

*G. W. Hamilton,* for appellant.

*McGregor & Fristoe,* for respondent.

Bridges, J.—The plaintiff was the owner of some lands located in section 5, township 9, N., R. 24 E. W. M., in Benton county, Washington. A part of these lands were high and of comparatively little farming value; other portions were low and were good for farming purposes. Plaintiff's chief crop was alfalfa. Immediately to the north of the lands owned by him, was a county road. At a place a little to the west of plaintiff's lands, the road ran through some very low land, or what is designated a "pothole." At this point

[1] Reported in 195 Pac. 519.

the road had been built up with a view of placing it above such waters as might gather there.

In the early fall of 1918, there was an unusual amount of surface water in this locality and the road where it was built through the low lands was flooded to such an extent that it could not be traveled. In order to relieve the road of this water, the county caused a ditch to be dug from the southerly edge of the "pothole," or low lands, through which the road was built, and extended it southerly for a short distance through a natural barrier of rock and soil, so that the water flooding the road was carried off through this ditch and emptied onto some low lands adjoining the plaintiff's lands on the west causing them to be unusually flooded, and, as a result, the plaintiff's lands were also flooded, damaging some hay which had been cut and left on the ground and drowning out and destroying a considerable amount of the alfalfa in the ground.

The plaintiff began this suit to recover damages of the county because of what it had done. There was a verdict for the plaintiff in the sum of four hundred twenty-five dollars. A demurrer to the complaint on the ground that it did not state a cause of action was overruled, and at the close of plaintiff's testimony, defendant moved for a nonsuit, and at the close of all the testimony, moved for a directed verdict, and after the verdict had been received, moved for judgment notwithstanding the verdict, all of which motions the court denied. The defendant has appealed from the judgment entered on the verdict.

The appellant here first contends that it was its duty under the law to maintain this road in a passable condition, and that, in draining the water therefrom, it was in the performance of a governmental duty, and for that reason it is not liable in damages. In the first place, it may be seriously doubted whether, in doing

what it did, the county was engaged in the performance of a strictly governmental duty. Ordinarily, a municipality is engaged in the performance of governmental functions when it is looking after the peace, health and well-being of the citizens of the state, and it is not in the performance of such governmental functions when it is building or repairing roads or streets. In the case of *Sutton v. Snohomish,* 11 Wash. 24, 39 Pac. 273, 48 Am. St. 847, this court said:

"In the first place, we are of the opinion that the laying out, repairing and controlling of streets by a chartered municipal corporation does not call forth the exercise of strictly governmental functions. In the performance of such duties, however imposed, the municipality acts primarily for the benefit of the inhabitants of the particular locality. In preserving the peace, caring for the poor, preventing the destruction of property by fire, and preserving the public health, it assumes duties which are said to be in their nature solely governmental (Jones on Negligence of Municipal Corporations, Ch. IV), and for the non-exercise, or negligent exercise, of which the corporation is not generally liable to individual citizens. But the duty to keep the streets in repair is a municipal or ministerial duty, for a breach of which an action will lie in favor of a party injured thereby."

However, in this case it is probably immaterial whether in doing what it did the appellant was or was not engaged in the performance of strictly governmental functions. Under the decisions of this court, it would be liable in a proper case in any event. We have consistently held that a strictly municipal corporation, such as a city, is not liable in damages brought about while it is engaged in the performance of strictly governmental functions. But we have refused to apply this rule to counties and school districts. The result is that it is the settled law in this state that a county is liable for damages, under proper facts, whether

it is engaged in carrying out a strictly ministerial duty or a strictly governmental function.

It is asserted in the briefs that there is no real ground upon which to base the distinction we have drawn between cities and counties, and we are asked to abandon our cases which hold that counties may become liable in damages resulting from the performance of strictly governmental functions. In the case of *Howard v. Tacoma School Dist. No. 10,* 88 Wash. 167, 152 Pac. 1004, Ann. Cas. 1917 D 792, we were urged in the same direction. There we reviewed in detail all of our decisions on this question and approved them. It is now the settled and fixed law in this state that a county may become, and a city is not, liable for damages done while engaged in the performance of a strictly governmental function.

But it is argued by the appellant that the waters which gathered on the road were surface and outlaw waters, and that it had a right to protect itself against them. In a great many cases we have laid down the general rule for which the appellant contends, but there is one exception to that general rule which, in this state, is as well established as the rule itself, and that is that one may not, by artificial means, convey surface and outlaw waters from his land and deposit them on the land of others to their damage. The latest case out of this court on the question is *Morton v. Hines,* 112 Wash. 612, 192 Pac. 1016. There, in discussing this identical question, we said:

"In these cases the owners of property sought to rid their lands of surface and percolating waters, and more or less permanent water beds, which were wont by nature to collect or rest thereon, by confining the water to artificial channels and casting it in a body on the lands of the adjoining proprietors. In the present case, and in the several cases we have cited as analogous in principle, the proprietors were but fencing

their own lands against the encroachment of surface water arising from sources apart and away therefrom. Owing to these differences in the facts, this court has applied to them different principles of law, holding in the one class of cases that the acts were wrongful and subject to restraint by the courts, and in the other that the land proprietors acted within their just rights.''

In the case of *Noyes v. Cosselman,* 29 Wash. 635, 70 Pac. 61, 92 Am. St. 937, this court said:

''When the waters are confined by natural barriers, so that the same do not run from such confinement naturally, the appellant may not construct a ditch on his own land so as to cast the waters which do not naturally pass therefrom on to his neighbor, to the material injury of such neighbor.''

See, also, *Wood v. Tacoma,* 66 Wash. 266, 119 Pac. 859; *Peters v. Lewis,* 28 Wash. 366, 68 Pac. 869; *Sullivan v. Johnson,* 30 Wash. 72, 70 Pac. 246. The facts of this case come squarely within the doctrine of the foregoing cases. The appellant would have had a right to protect itself against these surface waters by the raising of its road or the building of embankments upon its own property, even though those acts should cause the lands of others to be flooded to their damage; but here the appellant has dug an artificial ditch by means of which it sought to rid itself of these surface waters by casting them on the land of others. This it had no right to do.

It is further contended that the court's instruction with reference to the measure of damages to respondent's land was incorrect. That instruction informed the jury that the measure of damage is ''the difference, if any, between the value of his tract immediately before and immediately after such injury occurred . . . '' We have no doubt this instruction was correct. The only argument made against it is that it should have been to the effect that the damage should

be measured by the difference in the value of the land submerged, before and after the injury complained of, rather than the difference in the value of the whole tract before and after. The damage to the particular portion of the land submerged might have been one sum, and the damage to the whole tract, because a part of it had been submerged, might be another sum. The respondent owned this whole tract and was entitled to have it remain in its normal condition. Any damage to any portion of it would be a damage to the whole tract. The instruction given by the court is supported by the case of *Kincaid v. Seattle*, 74 Wash. 617, 134 Pac. 504, 135 Pac. 820.

We do not find any error in the record; the judgment is affirmed.

PARKER, C. J., MACKINTOSH, FULLERTON, and HOLCOMB, JJ., concur.